Betty J. TRAIL, Plaintiff-Appellant,

v.

INDUSTRIAL COMMISSION of Missouri, DIVISION OF EMPLOYMENT SECURITY OF the DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS of Missouri, and Von Der Ahe Van Lines, Inc., a corporation, Defendants-Respondents.

No. 36956.

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 3, 1976.

Joseph H. Langworthy, Jr., Pacific, for plaintiff-appellant.

Lloyd G. Hanley, Ind. Comm. of Mo., Dan J. Chatfield, Div. of Empl. Security, Jefferson City, for defendants-respondents.

McMILLIAN, Judge.

Appellant Betty J. Trail appeals from a judgment of the circuit court of Franklin County, Missouri, affirming the order of respondent Industrial Commission of Missouri (Commission) denying a review of a decision by the Appeals Tribunal of the Division of Employment Security under Missouri Employment Security Law. The Commission found that the decision of the Appeals Tribunal, denying appellant benefits because she had left her place of employment voluntarily without good cause attributable to her work or to her employer respondent Von Der Ahe Van Lines, Inc. (Van Lines), was supported by competent and substantial evidence and made in accordance with the law. We reverse and remand with instructions.

On or about November 26, 1965, appellant left her employment with Van Lines. Appellant had gone to her supervisor, Mrs. June Shoulders, and said that because of her pregnancy she would have to quit. According to appellant's testimony, Mrs. Shoulders told her that she was not going to quit but would go on a leave of absence. Mrs. Shoulders mailed a leave of absence form to her, and appellant filled out the form and returned it to Mrs. Shoulders.

Appellant never received a notice of whether her request was approved or not.

In the "Request for Leave of Absence" form, appellant asked to be excused because of pregnancy, from December 10, 1965, to "after child birth 1966". At the bottom of the request form a rectangular box appeared as follows:

| : Sup. | Approved | Illness : |
| :--- | :---: | ---: |
| : | | Other : |
| : J. M. Shoulders (written) | | : |

An employee, Mrs. Lucille Wilson, testified that she had heard Mrs. Shoulders say appellant was on leave of absence. Also there was testimony that another employee was on leave of absence for pregnancy.

Not only did Mrs. Shoulders deny making the statement attributed to her by Mrs. Wilson, but also both she and her boss, Mr. Von Der Ahe, president of the corporation, testified that she did not have the authority to grant extended leaves of absence for pregnancy or any other other reason. On the other hand, Mrs. Shoulders admitted that in her supervisory capacity she did have the authority to grant leaves of absence for limited periods; Mr. Von Der Ahe had given her this authority orally. Although differing as to the permissible length of time, Mr. Von Der Ahe admitted that Mrs. Shoulders had limited authority to grant short term leaves.

The Appeals Referee found that, since Mrs. June M. Shoulders had no authority to grant leaves of absence and since only Mr. Von Der Ahe had such authority, appellant's leaving work was voluntary and without good cause attributable to her employment or employer. Consequently, appellant's benefits were denied.

Section 288.020 declares the purpose of the Employment Security Law to be the compulsory setting aside of unemployment reserves for benefits for persons unemployed through no fault of their own. Section 288.050(1) provides: " . . . a claimant shall be disqualified . . . [if] he has left his work voluntarily without

good cause attributable to his work or to his employer . . . ." Additionally, the claimant has the burden of proof to show his right to benefits. *O'Dell v. Div. of Employment Security*, 376 S.W.2d 137 (Mo. 1964) and *Citizens Bank of Shelbyville v. Ind. Comm.*, 428 S.W.2d 895 (Mo.App.1968). In considering the above disqualification, three issues are generally presented: (1) Was there a voluntary quitting? (2) If so, was it with good cause? (3) If both of the foregoing are found, was the good cause attributable to claimant's work or his employer? *South Central Bell Telephone Co. v. Administrator, Div. of Employment Security*, 247 So.2d 615 (La.App.1971) and Comment, Unemployment Compensation in Louisiana, 19 La.L.Rev. 448, 461. In the present case we do not reach a consideration of either the second or third issues since we ultimately conclude that appellant did not voluntarily leave her work. Decisions of the Industrial Commission on questions of law do not bind this court; but, as to questions of fact, our review is limited to ascertaining upon the whole record whether the Commission could have reasonably made its findings and reached its results, considering the evidence most favorable to the award. *Combustion Engineering, Inc. v. O'Connor*, 395 S.W.2d 528 (Mo.App.1965). Here the appeals referee rejected appellant's evidence that her supervisor, Mrs. Shoulders, had granted her leave of absence. The referee gave as his reason for the rejection of appellant's evidence upon this issue: (1) Mrs. Shoulders' authority to grant leaves of absences was limited; (2) only the president, Mr. Von Der Ahe, had such authority; and (3) no one ever told appellant her request for a leave of absence was granted. In our judgment, a mixed question of law and facts is tendered, and we are not bound by the appeal referee's conclusions.

In *Wynn v. McMahon Ford Co.*, 414 S.W.2d 330, 336 (Mo.App.1967), we noted that where a person has created such an appearance of things that it causes a third person reasonably and prudently to believe that a second party has the power to act on behalf of the first person, the first person is thereby bound to the third person who relies upon the appearance so created. In such a case, the appearance of power is the equivalent of expressly conferred power insofar as third persons are concerned. Sometimes such appearances result from the first person's course of conduct in which he allows the second person to perform a series of acts in his name although he has not given the second person any authorization to act in the specific instance. *Johnson v. Hurley*, 115 Mo. 513, 22 S.W. 492 (1893). Sometimes it results, as here, from the appointment of the second person to a type of position which ordinarily involves the authority to perform a certain function although no such actual authority exists.[1]

In this posture, the evidence shows that appellant informed her supervisor that she was going to quit because of pregnancy. Immediately, her supervisor replied that she was not going to quit but was going on a leave of absence. Subsequently, the supervisor mailed a "Request for Leave of Absence" to appellant, which was returned and received by her supervisor. Pregnancy was given as the reason for the request, and the leave was to start December 10, 1965, and end "after child birth 1966." In the rectangular box under the printed word "Approved" was signed "J. M. Shoulders." No notation was contained thereon stating that the request was disapproved. No one notified appellant that her request was approved or disapproved. Nor did appellant seek a confirmation. The evidence by Mrs. Shoulders and Mr. Von Der Ahe established that Mrs. Shoulders had authority to grant

---

1. Restatement of Law of Agency Second, Comment (c) to § 49: "Inferences from agent's position. Acts are interpreted in the light of ordinary human experience. If a principal puts an agent into, or knowingly permits him to occupy, a position in which according to the ordinary habits of persons in the locality, trade or profession, it is usual for such an agent to have a particular kind of authority, anyone dealing with him is justified in inferring that he has such authority, in the absence of reason to know otherwise. The content of such apparent authority is a matter to be determined from the facts."

limited leaves of absence. Other evidence showed that Mrs. Shoulders had given leaves of absence before.

Mrs. Shoulders and Mr. Von Der Ahe testified that Mrs. Shoulders' authority was limited to granting leaves of absence for short periods of time, not long extended periods. However, Comments (a) and (d) to Restatement of the Law, Agency, Second, § 27 correctly states the rule: " * * * apparent authority can be created by appointing a person to a position, such as that of manager or treasurer, which carries with it generally recognized duties; to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position, regardless of unknown limitations which are imposed upon the particular agent." *Wynn v. McMahon Ford Co.,* supra, at 337.

It is true, as pointed out by respondent, that the Appeals Referee's finding that the employer did not grant a leave of absence to appellant is based upon competent and substantial evidence. But the core question is actually whether Mrs. Shoulders did, and whether she had the authority to do so? Our answer to both questions is in the affirmative. Mrs. Shoulders did grant the leave of absence, and she had at least the apparent authority to do so, thus binding her principal. Here, Mrs. Shoulders was the supervisor of her department and put into that position by the employer. Not only did both employer and Mrs. Shoulders admit to her having limited authority to grant leaves of absence; but also, equally important, Mrs. Shoulders, after representing to appellant that she was not going to quit but go on a leave of absence, mailed a "Request for Leave of Absence" form, supplied by employer, to appellant. And upon receipt of the request for leave of absence, Mrs. Shoulders approved it. Mrs. Shoulders also testified that she discussed appellant's request for a maternity leave with Mr. Von Der Ahe, and that he did not approve it. Yet, the "Request for Leave of Absence" apparently marked "approved" neither bore a notation of refusal by either Mrs. Shoulders or her boss, nor did Mrs. Shoulders

ever notify appellant that her request was turned down. Under these circumstances, either on the theory of apparent authority or by estoppel, since Mrs. Shoulders tendered the offer of a leave of absence and followed it up by mailing a company form, she should have at least notified appellant of the rejection of her request. Not having done so, in our judgment, appellant had the right to assume her request was granted. Furthermore, the evidence showed that (1) on February 8, 1966, after appellant had left work, she returned and did some work for the company; and (2) Mrs. Shoulders and appellant talked on the telephone on several occasions, and at no time did Mrs. Shoulders tell appellant that her request was rejected. Consequently, we hold that the employer placed Mrs. Shoulders in the position of supervisor and that her position as supervisor involved the authority to grant leaves of absence in her dealing with her subordinates. Although her authority was limited, such limitations were unknown to appellant and other employees. Therefore, Mrs. Shoulders had the apparent authority to do those things which supervisors ordinarily and customarily do, as to employees who knew that she was a supervisor, although they did not know what powers and limitations supervisors in such a business had. The employer is bound by her conduct.

■ In ordinary usage, the term "leave of absence" means that the employee is given permission to be absent from work for a certain time, at the expiration of which the employee will return to his employment status. Thus, in the ordinary case, where there is a leave of absence mutually agreed upon by the employer and employee, the employee does not voluntarily quit her job. *South Central Bell Telephone Co. v. Administrator, Div. of Employment Security,* supra, at 617. See also, *Lewis v. Calif. Unemployment Ins. App. Bd.,* 56 Cal.App.3d 729, 128 Cal.Rptr. 795 (1976), where "leave of absence" is defined as "not a termination of the employment: it preserves the employer-employee relationship in a state of suspense." Thus, a leave of absence is not a complete separa-

tion from employment; it connotes a continuity of the employment status, during which time performance of the duties of his work by the employee and remuneration by employer and other fringe benefits may be suspended.[2] In the *Lewis* case, supra, the California court stated:

"An employee who takes a genuine 'leave of absence,' . . . is also 'unemployed,' during the leave period . . . He is . . . 'disqualified' for benefits *during the period* because he 'left his . . . work voluntarily without good cause' . . . and his unemployment during the leave is therefore attributable to his own 'fault.' But where the ongoing job is terminated by the employer during the leave, with the result that it—the job—is not available to the employee at the expiration of the leave as anticipated by the parties, his consequent unemployment at that time has been caused by the employer's action alone. This means that his first-instance reasons for having taken the 'leave of absence' are no longer relevant for purposes of determining his eligibility for unemployment compensation benefits, that he is not currently unemployed due to his own 'fault,' and that he is accordingly not 'disqualified for . . . benefits' by reason of having 'left his . . . work voluntarily without good cause.'"

Here we find that Mrs. Shoulders granted appellant a leave of absence and that appellant received no assurance that she would be reemployed; consequently, since appellant was not a contract employee, respondent had the right to terminate her job at will. In any event, appellant retained her job during the leave. However, when she notified her supervisor in May, 1966, that she wished to return to work, her job was unavailable until another former employee was rehired. The effect of this was that appellant was laid off; as a result, her unemployment was caused not by her own fault for having taken the voluntary leave

of absence but by the fact that the employer had no job available. It was at this time that appellant filed a claim for unemployment compensation; and, under these circumstances, we hold appellant did not voluntarily quit her job.

For the reasons above, we reverse the judgment of the circuit court with directions to remand to the Commission to enter an award in accordance with this opinion.

WEIER, P. J., and RENDLEN, J., concur.

---

**2.** *Chenault v. Otis Engineering Corp.,* 423 S.W.2d 377, 383 (Tex.Civ.App.1967); Accord *State v. Grayston,* 349 Mo. 700, 163 S.W.2d 335, 341 (1942); *State v. Akron Civil Svc. Comm.,* 95 Ohio App. 385, 120 N.E.2d 127, 130 (1953); *Bowers v. Am. Bridge Co.,* 43 N.J.Super. 48, 127 A.2d 580, 585 (1956).