John A. MAHONEY, Appellee,

v.

DELAWARE McDONALD'S CORPORATION, Appellant.

No. 84–2633.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1985.

Decided Aug. 13, 1985.

Rehearings Denied Sept. 17, 1985.

Bernard L. Balkin, Kansas City, Mo., for appellant.

Samuel C. Ebling, St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and NICHOL,* Senior District Judge.

BRIGHT, Senior Circuit Judge.

Delaware McDonald's Corp. (McDonald's) appeals from a judgment of the United States Magistrate [1] finding McDonald's liable to Dr. John A. Mahoney under the doctrine of promissory estoppel for failing to execute a lease upon a newly purchased building. For reversal, McDonald's argues that the magistrate erred as follows: (1) in concluding that one Jack Baringer had apparent authority to act on behalf of McDonald's, (2) in concluding that liability existed under the doctrine of promissory estoppel, and (3) in calculating the amount of damages. We affirm the determination of liability on the basis of promissory estoppel but remand for further consideration of the damages.

## I. BACKGROUND.

Mahoney owned two buildings located at 105 and 107 North Eighth Street in St. Louis, Missouri. In the late fall of 1978,

Mahoney had conversations with Jack Baringer, a real estate representative in McDonald's St. Louis Regional Office, exploring the possibility of locating a McDonald's restaurant in Mahoney's buildings. In early 1979, Baringer visited the building at 107 North Eighth Street and indicated McDonald's interest in acquiring a larger store. Mahoney observed that the adjoining building at 109 North Eighth, although the same size as the 107 building, could be enlarged by the construction of an addition. Mahoney suggested that he could purchase the 109 building and lease it to McDonald's.

On March 10, 1979, Mahoney and his attorney, William Bowles, met Baringer at McDonald's Regional Office to discuss a lease on the 109 building. Baringer advised Mahoney and Bowles at this meeting that any lease would be approved by the St. Louis Regional Office and then had to be formally reviewed and approved at McDonald's Oak Brook, Illinois office. At or before this meeting, Mahoney received a specimen copy of McDonald's store lease form which gives McDonald's a conditional right of cancellation.[2]

On May 2, 1979, Mahoney executed an earnest money contract to purchase the 109 building and land for $300,000. The contract permitted Mahoney to terminate the purchase agreement for any reason within sixty days and receive a refund of his $1,000 earnest money deposit. On May 7, Mahoney and his attorney again met with Baringer at McDonald's Regional Office to negotiate several modifications Mahoney wished to make in McDonald's form lease. At this meeting, the parties agreed to a twenty-year lease, annual rental starting at $19,500, and an occupancy date of August 15. Mahoney advised Baringer of his sixty-day option contract on the 109 building.

---

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for District of South Dakota, sitting by designation.

1. The Hon. David D. Noce, United States Magistrate, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

2. [I]f it is determined from the Lessee's inspection that the premises cannot be altered or re-

modeled in order for the Lessee to utilize the demised premises for a McDonald's Restaurant, or that the premises contain frontage, depth, or square footage less than the amount in the building plan, or that the utility lines are not adequate, then the Lessee shall have the right to notify the Lessor of its intention to cancel this Lease, in which event this Lease shall terminate without further liability to either party.

On May 11, 1979, Mahoney's attorney sent a letter to Baringer enclosing a copy of the option contract on the 109 building and an addendum to McDonald's form lease based on the parties' May 7 negotiations. In early June, Baringer informed Mahoney on at least two occasions that a lease would be forwarded as soon as it was typed.

On June 29, Mahoney had not yet received a lease. He called Baringer and advised him that the option on the 109 building would end on July 1. Mahoney asked Baringer if the parties had a deal and Baringer replied, "We have a deal. Do you want to blow it?" Baringer stated that the lease was coming. On July 1, Mahoney exercised his option to purchase the 109 building and deposited an additional $9,000 earnest money.

On July 2, Baringer notified Mahoney that the lease was ready and Mrs. Mahoney picked it up at McDonald's Regional Office. Upon reviewing the lease, Mahoney's attorney discovered that the rental amount differed from the amount agreed upon at the May 7 meeting and that McDonald's had typed the lease on a different lease form. On July 10, Mahoney contacted Baringer and objected to the changes. Baringer agreed to increase the rental to the amount agreed upon and to retype the lease on the form McDonald's had originally supplied. Mahoney agreed to one change in the terms of the addenda: Rather than requiring McDonald's to pay one-third of the cost for remodeling the facade of the 109 building, McDonald's contribution would not exceed $10,000.

Sometime between July 20 and July 25, Baringer forwarded a corrected lease form to Mahoney. This lease was on the form originally furnished to Mahoney, provided for a rental of $19,500 per year and incorporated the May 11 addenda verbatim. The only difference between this lease and the agreement reflected in the May 11 letter was a "Work Addendum" added by McDonald's which limited McDonald's contribution for the facade remodeling to $10,000 and which provided that McDonald's would install its own entrance doors. Ma-

honey signed the revised lease on July 25 and returned it to McDonald's. He changed the date of occupancy from August 15 to September 1 and noted on McDonald's work addendum that McDonald's would provide entrance door frames as well as doors. On July 31, Mahoney closed the sale on the 109 building.

In late August 1979, Robert Doran, McDonald's senior manager for the St. Louis region, inspected the 109 building site and advised Mahoney that the site was not acceptable to him. On September 12, Mahoney visited McDonald's Regional Office and met Webb Blessley, who identified himself as Baringer's supervisor. Blessley stated he was taking over the matter of leasing the 109 building and informed Mahoney that McDonald's was having second thoughts about the location. Mahoney talked to Blessley about enlarging the 109 building by constructing an addition. In a letter dated October 3, 1979, Mahoney offered to construct an addition and lease McDonald's a total of 5,000 square feet for $34,000 per year. Mahoney indicated that this letter "would serve to waive the August 1979 lease." This proposal did not satisfy McDonald's and on October 12, 1979 Blessley wrote to Mahoney formally terminating negotiations and returning the lease which Mahoney had signed.

In March 1980, Mahoney leased the ground floor of the 109 building to Greiner's Submarine Sandwich Shops, Inc. for five years at $19,200 per year. Greiner's terminated its lease on December 31, 1981 by leaving in the middle of the night. Mahoney also made several attempts to sell the 109 building as part of a package with his buildings at 105 and 107 North Eighth. From March 1981 to July 1981 he negotiated with Southwestern Bell Telephone Company regarding the purchase of the buildings for $1,300,000. He then entered an option contract with Donn Lipton, giving Lipton the right to purchase the three buildings for $1,546,500. Unfortunately for Mahoney, neither deal was consummated. In September 1983, Mahoney's wife

opened a cafe on the ground floor of the 109 building.

Mahoney claimed that he incurred $736,-171.82 in expenses related to the purchase of the 109 building; $300,000 in purchase price debt and $436,171.82 in interest, taxes, insurance, etc. Offset against these expenses were the fair market value of the building, $300,000, plus $107,217.24 in income received. Thus, according to Mahoney, the expenses relating to the purchase exceeded the credits by $328,954.58. The magistrate adopted these debits and credits in assessing damages.

## II. DISCUSSION.

### A. Apparent Authority.

■ Before examining the magistrate's application of promissory estoppel, we must first decide whether McDonald's should be bound by Baringer's statements. Under Missouri law, apparent authority exists when a principal has created such an appearance of things that it causes a third person reasonably and prudently to believe that a second person has the power to act as the principal's agent. *Trail v. Industrial Commission, Division of Employment Security*, 540 S.W.2d 179, 181 (Mo.App. 1976); *Dudley v. Dumont*, 526 S.W.2d 839, 845 (Mo.App.1975); *see S.S. Silberblatt, Inc. v. Seaboard Surety Co.*, 417 F.2d 1043, 1049 (8th Cir.1969). The magistrate concluded that Baringer had apparent authority to act as McDonald's agent because McDonald's had placed him in a position where it was reasonable to assume that he had authority to negotiate and execute leases binding on McDonald's. *Mahoney v. Delaware McDonald's Corp.*, No. 80–665 C(4), slip op. at 15 (E.D.Mo. Oct. 9, 1984).

McDonald's contends that it was not reasonable for Mahoney to assume that Baringer had authority to act on behalf of McDonald's. In support of this contention, it points to the magistrate's finding of fact no. 8: "Baringer advised [Mahoney] that the lease would be approved by the St. Louis Regional Office and had to be formally reviewed and executed at [McDonald's] Oak Brook, Illinois office." McDonald's argues that Mahoney could not have reasonably believed that Baringer had authority to bind McDonald's to a lease once he knew that the lease was subject to review by the Oak Brook office.

■ We disagree. In discussing the issue of apparent authority, the magistrate made the following statement: "The undersigned believes that Baringer advised [Mahoney] that the execution of the lease in Oak Brook was a mere formality and that Baringer assured [Mahoney] that a lease would be forthcoming." We regard this statement as a finding of fact, even though it appears under the heading "CONCLUSIONS OF LAW." *See Elmore v. United States*, 404 F.2d 56, 57 (6th Cir.1968); *Solway Metal Sales, Ltd. v. Baltimore & Ohio Railroad Co.*, 344 F.2d 568, 569 (D.C. Cir.1965). Our review of the record indicates that this finding is not clearly erroneous. Accordingly, we accept the magistrate's conclusions that "[Mahoney] had reason to believe and did believe that Baringer had authority to enter binding lease agreements on behalf of [McDonald's]." Thus, the magistrate did not err in concluding that McDonald's was bound by Baringer's representations.

### B. Promissory Estoppel.

Missouri's courts have stated that there are three elements to be satisfied before the doctrine of promissory estoppel can be invoked: (1) a promise, (2) detrimental reliance on the promise, and (3) injustice can be avoided only by enforcement of the promise. *Mayer v. King Cola Mid-America, Inc.*, 660 S.W.2d 746, 749 (Mo.App. 1983); *Katz v. Danny Dare, Inc.*, 610 S.W.2d 121, 124 (Mo.App.1980). The courts have also quoted favorably from section 90 of the Restatement of Contracts, indicating that the "promise" requirement will only be satisfied by a promise which the promisor "should reasonably expect to induce action or forebearance of a definite and substantial nature." *In re Jamison's Estate*, 202 S.W.2d 879, 886 (Mo.1947); *Mayer v. King Cola Mid-America, Inc.*, *supra*, 660 S.W.2d at 749.

At trial, Mahoney argued that the elements of promissory estoppel were present in this case because he had purchased the building in reliance on Baringer's promise that the parties had "a deal." The magistrate found that Baringer had indeed made the promise and that Mahoney had acted in reliance. Accordingly, he held McDonald's liable under the doctrine of promissory estoppel.

McDonald's argues that none of the elements of promissory estoppel are satisfied in this case. First, it contends that it never promised to lease the 109 building from Mahoney. In support of this contention, it states that Baringer and Mahoney were still engaged in preliminary negotiations when Mahoney purchased the building and that Baringer never promised that McDonald's would lease the building from Mahoney.

The magistrate properly rejected McDonald's "negotiation" contention. The only "negotiations" occurred when Baringer attempted to alter the terms outlined in Mahoney's attorney's letter dated May 11, 1979 (memorializing the parties' May 7, 1979 agreement), and those negotiations resulted in restoration of the agreed upon terms. No other changes of any substance were made to the parties' original agreement. McDonald's contention that Baringer never made a promise to Mahoney is in direct conflict with the magistrate's finding of fact. McDonald's attempts to reargue the evidence, but does not assert that the finding was clearly erroneous. We conclude that the finding is plausible in light of the conflicting evidence presented at the trial and, in deference to the magistrate's superior position to determine the credibility of the witnesses before him, we accept the finding. *See Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Accordingly, we conclude that the first element of promissory estoppel is present in this case.

McDonald's next argues that Mahoney could not have reasonably relied on Baringer's statement, "We have a deal," because he knew that Baringer did not have the

authority to commit McDonald's to a lease. This argument simply repeats McDonald's earlier contention that Mahoney knew that all leases had to be reviewed at McDonald's Oak Park, Illinois office. We rejected that contention in our discussion of apparent authority, and we reject it here as well.

Finally, McDonald's argues that the doctrine of promissory estoppel does not apply to this case because the claim is barred by the statute of frauds and because Mahoney waived the claim in his letter of October 3, 1979. The magistrate noted that, under Missouri law, a court may enforce oral promises otherwise barred by the statute of frauds if enforcement is necessary to prevent a deep-seated fraud or equitable wrong. He concluded that barring Mahoney's action in this case would result in a deep-seated injustice because Mahoney not only lost the promised lease, he also purchased a building and incurred substantial expenses. We think this is a permissible application of state law and we defer to the magistrate's interpretation. The magistrate also concluded that Mahoney's letter of October 3, 1979, in which he stated, "This letter will also serve to waive our previous lease," did not constitute a waiver, because waiver is an intentional relinquishment of a known right and there was no evidence that Mahoney used the word in its legal sense. We agree.

■ We conclude that the magistrate did not err in applying the doctrine of promissory estoppel to the facts in this case. Mahoney could have allowed his option on the subject property to lapse. He acted further and purchased the building only when assured by Baringer that "we have a deal." These events, together with the obvious injustice which would result if Mahoney is left holding an empty bag, are sufficient to invoke the doctrine of promissory estoppel.

**C. Damages.**

■ Under the doctrine of promissory estoppel, damages may be measured by the extent of the promisee's reliance. Restatement (Second) of Contracts § 90 comment d (1979). In other words, our objective in this case is to reimburse Mahoney for the

expenses he incurred in reliance on Mc-Donald's promise to lease the 109 building.

Mahoney borrowed the entire $300,000 used to purchase the 109 building. From July 1979 to November 1983, he claims that he paid $404,342.83 in interest on that loan. During this period, he also paid $31,828.99 for taxes, insurance, etc. on the building. The magistrate concluded that Mahoney was entitled to receive 100% of these expenses as part of his reliance damages. McDonald's contends that the magistrate erred in awarding 100% of the expenses. It argues that Mahoney's damages should be limited to exclude the amount he could have avoided by acting prudently when he learned that McDonald's had repudiated the lease.

We think McDonald's contention has merit. Under section 90 of the Restatement (Second) of Contracts, the remedy in promissory estoppel cases "may be limited as justice requires." It would be unjust for Mahoney to hold the 109 building indefinitely while McDonald's paid interest on the purchase price. Instead, Mahoney was entitled to a reasonable time to sell the building or make an alternative disposition of it. His expenses during this time, plus any loss sustained on the disposition of the building, would constitute his just reliance damages.

The record does not indicate that Mahoney ever made any attempt to sell the 109 building after McDonald's breached the lease. There is no indication that the building was not marketable; in fact, the magistrate found that it had a fair market value of $300,000. If Mahoney could have sold the building for $300,000 in 1979, we must conclude that his failure to do so was based on his decision that he could do better for himself by making an alternative disposition of the building.[3] Therefore, once Mahoney decided to keep the building, he was no longer acting in reliance on McDonald's promise, he was acting on the basis of his own decision.

In March of 1980, Mahoney decided to lease the ground floor of the building to a sandwich shop. This occurred five months after McDonald's terminated discussions and returned the lease documents to Mahoney. On the basis of the above analysis, we conclude that this lease represented Mahoney's decision to keep the property in spite of McDonald's refusal to execute a lease. We think that the five months Mahoney actually spent in deciding what disposition to make of the building was a reasonable time under the facts of this case. Accordingly, we conclude that Mahoney is entitled to reimbursement for the interest and other expenses incurred prior to March 1980. Subsequent expenses are Mahoney's responsibility because they represent a calculated risk on his part to hold on to the building instead of selling it outright.

### III. CONCLUSION.

We affirm in part and reverse in part and remand for a redetermination of damages consistent with this opinion. No costs are awarded in this appeal.

---

**3.** For example, he might have concluded that he could do better by selling the 109 building in a "package" with the two contiguous buildings that he already owned. In fact, Mahoney has negotiated with both Southwestern Bell Telephone Company and Donn Lipton regarding a package deal on all three buildings.