**Dorothea LAKE, Respondent,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION, DIVISION OF EMPLOYMENT SECURITY and Marion County Ambulance District, Appellants.**

**No. 56108.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

Nov. 14, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 12, 1989.

Branson L. Wood, III, Hannibal, for appellants.

John Boyd Morthland, Hannibal, for respondent.

DOWD, Presiding Judge.

This appeal follows a circuit court reversal of the Division of Employment Securi-

ty's denial of unemployment benefits to Dorothea Lake. We reverse.

Ms. Lake, a paramedic, suffered an eye injury in an automobile accident unrelated to her job on May 17, 1986. The injury affected her vision in such a way that she was unable to drive an ambulance. Consequently, she took sick leave until August 3. On this date, her employer, the Marion County Ambulance District, allowed her to return to work doing only the clerical duties associated with her position of field supervisor. Another employee took her driving duties. The employer later demoted Ms. Lake to a paramedic position because it felt she was unqualified for the field supervisor position. Because the paramedic position required her to drive an ambulance, Ms. Lake was again placed on sick leave on August 23. When the sick leave ran out on September 29, Ms. Lake requested and was granted a medical leave of absence. The employer informed her, by letter, that the leave was granted "with the understanding that you will provide this office with a definite date of return ... by no later than the close of business hours on October 23, 1986." The employee handbook stated that unless an employee on leave of absence requested an extension or returned to work upon the expiration of the leave, she was assumed to have quit. The leave did not guarantee Ms. Lake a position on return, but did preserve her seniority. On October 23, Ms. Lake still did not have a doctor's clearance to drive an ambulance and, because she was under the impression that the leave would continue indefinitely, she did not request an extension.

On September 29, Ms. Lake applied for unemployment benefits, but her request was denied by the Division of Employment Security. The Division held she was not available for work as required by section 288.040.1(2), RSMo 1986, from September 29 to October 23 and that on October 23 she voluntarily terminated her employment, disqualifying her from benefits under section 288.050.1. The cause then went to the Division's Appeals Tribunal which affirmed the decision. Ms. Lake further appealed to the circuit court of Marion County. The court reversed the Division's

decisions, finding in part that Ms. Lake did not leave her employment voluntarily without good cause attributable to her work and that she was in fact available for work under the Employment Security Law.

The employer now appeals from the circuit court's decision, claiming that: (1) the Division correctly found Ms. Lake was not available for work; (2) the Division correctly found that Ms. Lake voluntarily left her employment without good cause; (3) a request for leave of absence without guarantee of a job upon return amounts to a voluntary termination.

■ The resolution of this case turns on the application of section 288.050.1, RSMo 1986, which states that a claimant will be disqualified from receiving unemployment benefits if he "left his work voluntarily without good cause attributable to his work or to his employer." An employee whose employment terminates because of personal illness unrelated to her employment is considered to have voluntarily left her work without good cause attributable to her employer unless the illness was caused or aggravated by her work. *Duffy v. Labor and Industrial Relations Com'n*, 556 S.W.2d 195, 198 (Mo.App.1977). When such an illness causes an employee to take a leave of absence, the issue becomes clouded. As noted in *Neely v. Industrial Com'n of Mo. Div. of Employment Security*, 379 S.W.2d 201, 205 (Mo.App.1964), "[a] person may not at the same time occupy the status of one employed and that of one unemployed." The employee's status during the leave must be identified when determining her right to unemployment insurance.

In *Trail v. Industrial Commission Division of Employment Security*, 540 S.W.2d 179 (Mo.App.1976), this court granted unemployment benefits to an employee who was not given employment when her leave of absence terminated. When the employee became pregnant, she informed her employer she intended to quit, but the employer put her on a leave of absence without guarantee of reemployment. When the employee sought to return, she was in-

formed that her job was unavailable and she requested unemployment benefits from that date. The court found that a true leave of absence does not terminate the employer-employee relationship and thus is not a voluntary termination of employment. *Id.* at 182. Consequently, during this time the employee is not entitled to unemployment benefits. *Id.* at 183. Where the job is terminated during the leave, however, the employee becomes unemployed due to the employer's actions and at this point becomes eligible for benefits. *Id.*

More recently, the Western District Court of Appeals, in *Division of Employment Security v. Labor and Industrial Relations Commission*, 617 S.W.2d 620 (Mo.App.1981), concluded that a leave of absence without a guarantee of re-employment is not a true leave of absence and that an employee who accepts such a leave voluntarily terminated this employment. The court distinguished between leaves which contemplated rehiring for a particular position as opposed to work at some undefined job; the former constituted a true leave of absence while the latter did not. *Id.* at 626–27. *Trail*, although involving a leave without guarantee of rehire, was identified as falling into the former category because the leave contemplated rehire at the same position. *Id.* at 627. A concurring opinion by Judge Dixon identified the rationale behind the general rule.

> A contingent arrangement between an employer and employee ... tends to promote the stability and continuity of employment by deferring the necessity for the employee's voluntary termination of employment. If an employer is not permitted to enter into such contingent arrangements with employees without becoming, in effect, an insurer of the employee's benefits, employers will not undertake such contingent arrangements.

*Id.* at 629.

In the case at bar, Ms. Lake's leave was not a true leave of absence as defined in *Division of Employment Security v. Labor and Industrial Relations Commission*. The letter granting leave stated that upon Ms. Lake's eligibility for return to duty "your application will be considered for the next available opening for your classification with Marion County Ambulance District." Clearly, no particular job was being held for Ms. Lake. As such, her acceptance of the leave of absence on September 29 constituted a voluntary termination of employment and because this termination was caused by a presumed illness unrelated to her job, the termination was not attributable to her work or employer. Thus, Ms. Lake was not entitled to benefits either during or after her leave of absence and the circuit court erred in reversing the decision of the Division.

Because we hold that Ms. Lake was not entitled to unemployment benefits either during or after her leave of absence, we need not address the additional questions raised by appellant. We reverse the decision of the circuit court and reinstate the decision of the Commission.

CRIST and KAROHL, JJ., concur.