Amy DIFATTA–WHEATON, Appellant,

v.

DOLPHIN CAPITAL CORPORATION,
Defendant,

Division of Employment Security,
Respondent.

No. SC 89239.

Supreme Court of Missouri,
En Banc.

Dec. 16, 2008.

Susan Ford Robertson, Columbia, for Appellant.

Matthew W. Murphy, Marilyn Green, Jefferson City, for Respondent.

MARY R. RUSSELL, Judge.

When Amy Difatta–Wheaton ("Claimant")[1] was diagnosed with ovarian cancer, she was required to miss work to receive the emergency medical treatment she needed to save her life. This disease was

1. The Court expresses its appreciation to attorney Susan Ford Robertson, who represented Ms. Difatta–Wheaton *pro bono* by appointment of this Court.

certainly not her fault, nor a voluntary condition that she chose. Yet, she was disqualified by the Labor and Industrial Relations Commission ("Commission") from receiving certain unemployment benefits under the Missouri employment security statute, section 288.050.1(1), RSMo Supp.2007.[2] She seeks review of the Commission's decision.

This Court granted transfer after the court of appeals reversed the Commission's decision. Mo. Const. art. V, sec. 10. Applying the law to the facts in this case, Claimant's absence from work was not voluntary. As such, this Court reverses the Commission's decision and remands for entry of an order consistent with this holding.

## I. Background

Claimant was employed by Dolphin Capital Corporation ("Company") as a sales representative. In 2006, she was diagnosed with ovarian cancer. Pursuant to a doctor's statement that she could not work due to excessive bleeding, Company granted her medical leave between May 24 and May 29, 2006. She was due to return to work at 8 a.m. May 29. But, the evening before this return date, she suffered a medical emergency related to her ovarian cancer. At 7:30 a.m. May 29, she left a message with her supervisor stating that she was unable to come to work that day due to cancer complications. In the message, she also stated that she would fax over a statement from her doctor, whom she would visit later that day.

Claimant testified that the doctor faxed a statement on May 29, and that her friend also delivered a copy of the doctor's statement to Company. After she did not hear back from her supervisor, she stated that

she sent another copy of the excuse to Company via her boyfriend.[3] A letter from Company dated June 5 stated that she had voluntarily resigned because of unexcused absences between May 29 and June 5. She filed for unemployment benefits, and a deputy for the Division of Employment Security ("DES") found that she had voluntarily quit her employment and denied her benefits. The DES appeals tribunal and the Commission affirmed this decision.

The Commission credited Claimant's testimony by adopting the appeals tribunal's findings of fact, which stated: "The physician's office faxed a document to the employer prescribing the claimant off work until July 29, 2006." The findings also included that Claimant's friend had dropped off a copy of the doctor's statement.

## II. Standard of Review

In reviewing the Commission's decision, this Court is not bound by the Commission's conclusions of law or its application of the law to the facts. *See* section 288.210, RSMo 2000; *Div. of Employment Sec. v. Taney County Dist. R–III*, 922 S.W.2d 391, 393 (Mo. banc 1996). Where, as is the case here, there is no factual dispute, and the issue is the construction and application of a statute, the case presents an issue of law that this Court reviews *de novo*. *Id.*

## III. Analysis

The question before this Court is whether Claimant's absence from work, when stemming from complications from ovarian cancer and accompanied by notice to her employer, establishes that she "left work voluntarily" under the terms of section

---

2. Unless otherwise noted, all references to section 288.050.1 are to RSMo Supp.2007.

3. Company admits that it received the telephone message, but its office administrator testified that she did not receive a written excuse for the relevant dates.

288.050.1(1). If, as DES argues, Claimant's absence was voluntary, she is not entitled to certain unemployment benefits.

### A. Applicable statutes and previous Missouri case law

The general public policy statement in Missouri's employment security law, chapter 288, must first be considered. · Section 288.020, RSMo 2000,[4] provides:

**Public policy declared—construction of law:**

1. As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used *for the benefit of persons unemployed through no fault of their own.*

2. *This law shall be liberally construed to accomplish its purpose* to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment.

(italicized emphasis added).

The statute to be applied, section 288.050.1, states the conditions for when an otherwise eligible claimant for unemployment benefits may be disqualified. As pertinent here, it provides:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work *voluntarily* without good cause attributable to such work or to the claimant's employer.

Section 288.050.1 (emphasis added). No definition of "voluntarily" is stated.

Missouri courts have interpreted section 288.050.1(1) in various factual circumstances. Many cases have addressed the situation where a personal illness is coupled with another element, such as lack of notice to the employer, and have concluded that the absence was voluntary. In *Reutzel v. Missouri Division of Employment Security,* 955 S.W.2d 239, 240–41 (Mo.App. 1997), a claimant was absent because of personal illness, and he failed to contact the employer to give notice of that absence. The court there found the absence to be voluntary. *Id.* at 242. *See also Turner v. Labor & Indus. Relations Comm'n of Mo.,* 793 S.W.2d 191 (Mo.App. 1990) (voluntary quit found when, after checking out of hospital, claimant did not then return to work and gave no notice of this when there was a policy requiring notice).

Other cases, such as *Duffy v. Labor & Industrial Relations Commission,* 556 S.W.2d 195 (Mo.App.1977), addressed section 288.050.1(1) in the context of an employee's personal illness when the employee affirmatively resigned because of that illness. The Duffy court held that the claimant "left work voluntarily." *Id.* at 198. In addressing its particular factual

---

4. All references to section 288.020 are to RSMo 2000. *See also Mo. Div. of Employment Sec. v. Labor & Indus. Relations Comm'n of Mo.,* 651 S.W.2d 145, 148 (Mo. banc 1983) (acknowledging section 288.020's policy .directive).

circumstances, the *Duffy* decision and its progeny include broad propositions that reach beyond the particular facts in those cases. For example, *Duffy* states that "[p]ersonal illness of the employee unrelated to her employment will not render termination involuntary unless the illness was caused or aggravated by the work or the employer." *Id.* (concluding that the lack of a causal connection between work and the illness meant that the claimant "must be held as a matter of law to have left her job voluntarily").

*Duffy* also cites *Bussmann Manufacturing Co. v. Industrial Commission*, 335 S.W.2d 456 (Mo.App.1960), in support of its reasoning on this point. *Duffy*, 556 S.W.2d at 198. In *Bussmann*, a pregnant employee who was refused an official leave of absence was deemed to have left work voluntarily.[5] *Bussmann*, 335 S.W.2d at 461. The court applied section 288.050.1(1) under that distinct factual scenario and came to its conclusion by interpreting the language "without good cause attributable to such work or to the claimant's employer" as defining "voluntarily," even though nothing in the syntax suggested a definitional relationship. *See id.* at 460.

Notably, however, other Missouri cases have not followed the reasoning in *Duffy*,

*Bussmann*, and their progeny. *Trail v. Industrial Commission of Missouri*, 540 S.W.2d 179, 181 (Mo.App.1976), construed section 288.050.1(1) as follows: "three issues are generally presented: (1) Was there a voluntary quitting? (2) If so, was it with good cause? (3) If both of the foregoing are found, was the good cause attributable to claimant's work or his employer?"[6] This approach has been applied in some Missouri cases when a claimant leaves work for non-work-related reasons, such as personal illness. *See Miller v. NuCrown, Inc.*, 238 S.W.3d 233, 235 (Mo.App.2007) (finding that termination was not voluntary when claimant followed her company's policy for calling in sick but was fired for her absence nevertheless); *see also Miller v. Help at Home, Inc.*, 186 S.W.3d 801, 806 (Mo.App.2006) (stating that it is the employee's burden to show "that either he did not leave employment voluntarily, or, that if he did, he did so with good cause").

## B. Claimant's illness does not constitute a voluntary termination of employment

■ To determine the correct application of the language "left work voluntarily" to the facts of this case, the statute at issue, section 288.050.1(1), must be ad-

---

5. Although the facts in *Bussmann* involve leave because of pregnancy, this type of leave has since been distinguished statutorily by section 288.050.1(1)(d), RSMo 2000.

6. The *Trail* court read Missouri's statute in the same manner as Louisiana courts, which had interpreted a former version of Louisiana's similar employment security statute. For example, in *South Central Bell Telephone Co. v. Division of Employment Security*, 247 So.2d 615 (La.Ct.App.1971), the court found that a leave of absence for the employee to care for her children, when the employee was led to believe the job would be available upon her return, was not a voluntary leaving of

work. Much like the Missouri statute now in force, but without the word "voluntarily," the Louisiana statute disqualified an employee: "(1) If the administrator finds that he has left his employment without good cause connected with his employment." *Id.* at 617 (citing LSA–R.S. 23:1601). The Louisiana court reasoned that the employee did not make a choice to leave her job, and, thus, did not fall under this disqualification; to hold otherwise, the court noted, would have frustrated the purpose of the employment security statute as then written. *Id.* at 617–18. As the *Trail* court also observed, because the element of voluntariness or choice was not satisfied, the remainder of the provision involving causa-

dressed. *See Abrams v. Ohio Pac. Express,* 819 S.W.2d 338, 340 (Mo. banc 1991) ("The primary role of courts in construing statutes is to ascertain the intent of the legislature from the language used in the statute and, if possible, give effect to that intent."). It provides that benefits will be withheld if the claimant has "left work voluntarily without good cause attributable to such work or to the claimant's employer." Section 288.050.1(1). On its face, the language excluding eligibility applies to those leaving work "voluntarily," with the proviso that someone who leaves voluntarily will still be eligible for benefits if that person voluntarily left for good cause stemming from work. Logically, then, those who leave work involuntarily are never disqualified from eligibility under this provision, and of those who do leave voluntarily, some will still be covered under the proviso.

The general statement of purpose in chapter 288, codified as section 288.020, supports this reading. As quoted in full above, the public policy declaration states that the General Assembly has set aside compulsory unemployment reserves "for the benefit of persons unemployed through *no fault* of their own." Section 288.020.1 (emphasis added). Moreover, it states that "[t]his law shall be liberally construed to accomplish its purpose." Section 288.020.2. In this context, the plain meaning of "fault" is "responsibility for wrongdoing or failure." Webster's Third New International Dictionary 829 (Una-

bridged, 1993). In other words, the General Assembly sought to provide help to those who were not themselves to blame for their unemployment and, in turn, to have courts construe the specific provisions of Missouri's employment security law accordingly.

Especially given the General Assembly's directive that "this law shall be liberally construed to accomplish its purpose," this Court is obligated to give "voluntarily" its plain meaning. "Voluntarily," in this context, means "proceeding from the will: produced in or by an act of choice." Webster's Third New International Dictionary 2564 (Unabridged, 1993). This meaning requires a court to make a factual determination regarding voluntariness. As such, past Missouri cases suggesting that leaving employment for a non-work-related illness is, as a matter of law, leaving work voluntarily, are inconsistent with the General Assembly's plain language in sections 288.050.1(1) and 288.020. To the extent that these cases suggest that non-work-related illness is a *per se* disqualification, they should no longer be followed.[7]

This Court's task, then, is to apply the law to the facts, asking whether Claimant's absence from work was voluntary in light of the law's plain language and these particular facts. Viewing the Commission's adopted findings of fact, which this Court accepts as true, she cannot be said to have left work voluntarily. She was seriously ill from ovarian cancer and had been experi-

---

tion did not come into play given its wording. *Id.*

7. For examples of this disaffirmed language, see *Duffy,* 556 S.W.2d at 198, and *Lake v. Labor & Industrial Relations Commission,* 781 S.W.2d 207, 208 (Mo.App.1989) (finding a voluntary quit where no extension was requested as required when on non-work-related medical leave, and citing Duffy for the erroneous proposition that "[a]n employee whose employment terminates because of personal illness unrelated to her employment is

considered to have voluntarily left her work ...."). Other cases with differing facts apply the same sweeping language. *E.g., Wimberly v. Labor & Indus. Relations Comm'n of Mo.,* 688 S.W.2d 344, 346 (Mo. banc 1985) ("Missouri courts have interpreted this provision to disqualify claimants who quit their job on account of pregnancy or personal illness unrelated to the employment."); *Fifer v. Mo. Div. of Employment Sec.,* 665 S.W.2d 81, 82 (Mo.App.1984) (addressing an extended absence due to personal illness when company had a policy of not holding open positions).

encing excessive bleeding. On the Sunday night before she was to return to work, she suffered a cancer-related medical emergency. She notified her employer of her medical emergency the next morning, prior to when she had been scheduled to return to work, and then reported to her doctor. Additionally, the facts show that she was in compliance with the company's written policy[8] and conveyed a written excuse to her employer through facsimile and through her friend. It cannot be said that she made a choice or was otherwise responsible for her ovarian cancer, its complications, or the timing of their occurrence. And, she took the steps necessary to preserve her employment given these uncontrollable factors.[9] It would be inconsistent with the statutory language of "no fault" and "voluntarily" to hold otherwise.

## IV.  Conclusion

The Commission's decision denying Claimant unemployment benefits on the basis that she left work voluntarily is reversed, and the case is remanded.

STITH, C.J., PRICE, TEITELMAN and WOLFF, JJ., and NORTON and PEACE, Sp.JJ., concur.

BRECKENRIDGE and FISCHER, JJ., not participating.

---

8.  Company's policy provides in relevant part: In the event an employee must be absent, he or she must notify his or her supervisor in advance or as soon as possible after the need to be absent becomes evident. An employee absent from work for three (3) consecutive business days without having provided proper notification will be considered to have voluntarily abandoned his or her job.

Employees who are unable to report to work for five (5) consecutive days due to an illness or injury must provide written medi-

cal certification from a physician or licensed health care professional documenting the reasons for the absence and the length of time an employee is expected to be out of work.

9.  This Court's holding addresses the facts in Claimant's case. Other hypothetical fact scenarios are not present and are not addressed.