**Eileen CARTER, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

No. WD 73538.

Missouri Court of Appeals, Western District.

Oct. 18, 2011.

John J. Ammann, Kirsten Staples, Rule 13, St. Louis, MO, for Appellant.

Leah Williamson, Jefferson City, MO, for Respondent.

Before Division IV: LISA WHITE HARDWICK, Chief Judge, Presiding, MARK D. PFEIFFER, Judge, and ANN MESLE, Special Judge.

MARK D. PFEIFFER, Judge.

Eileen Carter ("Claimant"), a military spouse, appeals the decision of the Labor and Industrial Relations Commission ("the Commission") affirming the Appeals Tribunal's finding that Claimant voluntarily left her employment without good cause attributable to her work or her employer and was, therefore, disqualified from receiving unemployment compensation benefits. On appeal, Claimant argues that the Commission erred in denying her claim for unemployment benefits in that her husband's military relocation orders were mandatory, she was not at fault for the military relocation, and the Commission thus failed to properly apply the voluntariness analysis interpreting section 288.050.[1] We agree. The decision of the Commission is reversed and remanded.

## Factual and Procedural Background

Claimant worked as a salesperson for RSW Admin, LP ("Employer") in Employer's work location in Poplar Bluff, Missouri, from October 1, 2007, through August 31, 2010. Claimant's spouse actively served in the United States military and continues to do so. On July 22, 2010, the Department of the Army issued orders for Claimant's spouse to proceed on permanent change of station to Fort Hood, Texas, with a reporting date of November 10, 2010. Claimant notified Employer of her husband's transfer orders and informed Employer that she would move to Texas to be with her husband and children. Claim-

---

1. All statutory references are to the Revised Statutes of Missouri (2000), unless otherwise indicated.

ant requested an employment transfer to any work location of Employer at or near Fort Hood, Texas, but Employer did not have any work locations in that area and could thus not accommodate Claimant's request to preserve her employment with Employer. Claimant's final date of employment with Employer was August 31, 2010.

On September 1, 2010, Claimant filed a claim for unemployment insurance benefits. A deputy from the Missouri Division of Employment Security ("the Division") denied her claim on September 27, 2010, determining that Claimant left work with Employer voluntarily without good cause attributable to her work or Employer in that she quit for the personal reason of relocating to the state of Texas.

Claimant appealed to the Division's Appeals Tribunal on October 4, 2010. Claimant testified by telephone conference call at the hearing held on October 27, 2010. She testified that because of her husband's mandatory military relocation orders to the state of Texas, she had no reasonable choice but to leave her employment in Missouri to move with her husband and children to Texas. The Appeals Tribunal concluded that Claimant voluntarily left her employment in Missouri with Employer to move with her family to Texas and, accordingly, affirmed the Division's denial of unemployment benefits.

Claimant filed an application to have the Appeals Tribunal's decision reviewed by the Commission. The Commission affirmed and adopted the decision of the Appeals Tribunal. Claimant's timely appeal from the Commission's decision followed.

### Standard of Review

The Missouri Constitution, article V, section 18 provides for judicial review of the Commission's award to deter-

mine whether the award is "supported by competent and substantial evidence upon the whole record." Section 288.210 governs appellate review of the Commission's decision in an unemployment compensation case. *Timberson v. Div. of Emp't Sec.,* 333 S.W.3d 30, 31–32 (Mo.App. W.D.2010). Section 288.210 provides:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

An appellate court "must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003). "While the appellate court gives deference to the Commission's findings of fact, the court is not bound by the Commission's conclusions of law or the Commission's application of law to the facts." *Timberson,* 333 S.W.3d at 32. Whether an employee voluntarily terminated employment is generally a factual determination. *Johnson v. Div. of Emp't Sec.,* 318 S.W.3d 797, 799 (Mo.App. W.D. 2010). However, whether the facts found

by the Commission constitute a voluntary departure from employment as a matter of law is an issue we review *de novo*. *Id.*

### Analysis

■ In her sole point on appeal, Claimant asserts that the Commission erred in finding that she voluntarily quit work pursuant to section 288.050 where her departure from work with Employer was attributable to her husband's mandatory military transfer orders.

Section 288.050.1(1) provides that an otherwise eligible claimant for unemployment benefits may be disqualified when the deputy finds: "(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." The question before this court is whether Carter's resignation due to her husband's mandatory and permanent military change of station order was voluntary.

We find that the Missouri Supreme Court's voluntariness analysis in *Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008), is controlling. In *Difatta–Wheaton*, the claimant appealed the Commission's denial of her claim for unemployment benefits on the grounds that she left work voluntarily under the terms of section 288.050.1(1) when she failed to return to work after an authorized leave due to serious health complications associated with ovarian cancer. 271 S.W.3d at 595–96. Because the statute does not define "voluntarily," our Supreme Court engaged in statutory construction.

As the background for construing the statutory language, the Supreme Court noted that the declared public policy of the State of Missouri is that "the public good and the general welfare of the citizens of this state require the ... compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own.*" § 288.020.1; *Difatta–Wheaton*, 271 S.W.3d at 596 (emphasis added). The legislature has instructed that "[t]his [Employment Security] law shall be liberally construed to accomplish its purpose to promote employment security ... by providing for the payment of compensation to individuals in respect to their unemployment." § 288.020.2; *Difatta–Wheaton*, 271 S.W.3d at 596. The Court found the plain meaning of "fault" to be " 'responsibility for wrongdoing or failure,' " and the plain meaning of "voluntarily" to be " 'proceeding from the will: produced in or by an act of choice.' " *Difatta–Wheaton*, 271 S.W.3d at 598 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 829, 2564 (Unabridged, 1993)). According to our Supreme Court, "the General Assembly sought to provide help to *those who were not themselves to blame* for their unemployment and, in turn, to have courts construe the specific provisions of Missouri's employment security law accordingly." 271 S.W.3d at 598 (emphasis added).

The Supreme Court viewed the Commission's adopted findings of fact as true and applied the law to the facts, "asking whether Claimant's absence from work was voluntary in light of the law's plain language and these particular facts." *Id.* The Supreme Court found that it would be inconsistent with the statutory language of "no fault" and "voluntarily" to hold that claimant left work voluntarily when she suffered a cancer-related medical emergency and notified her employer that she was unable to return to work as scheduled. *Id.* at 599. The Supreme Court reversed the Commission's decision denying claimant unemployment benefits on the basis that she left work voluntarily. *Id.*

Following the Missouri Supreme Court's opinion in *Difatta–Wheaton*, Missouri's ap-

pellate courts have further construed the meaning of "voluntarily" leaving work when, but for circumstances beyond the claimant's control, the claimant would not leave work. This court recently noted that it is difficult to apply the phrase "left work voluntarily" where "the employee has conscientiously provided notice of the absence, purports to want to be at work, and claims constraint from attendance by circumstances such as sickness or some other difficulty." *See Johnson*, 318 S.W.3d at 801 (emphasis omitted). *See also Davis v. Transp. Sec. & Div. of Emp't Sec.*, 295 S.W.3d 594 (Mo.App. E.D.2009) (holding claimant did not quit work voluntarily when her failure to return to work was due to serious health complications associated with her ectopic pregnancy); *Korkutovic v. Gamel Co.*, 284 S.W.3d 653 (Mo.App. E.D. 2009) (holding claimant did not leave work voluntarily when he was unable to work as a janitor due to medical restrictions). *Cf. Brown v. Div. of Emp't Sec.*, 320 S.W.3d 748 (Mo.App. W.D.2010) (holding that, in light of Commission's findings that claimant resigned to relocate to another state due to domestic violence, remand was required for Commission to determine whether claimant did not leave her job voluntarily).

In applying the *Difatta–Wheaton* voluntariness analysis to this case, we give deference to the Commission's adopted findings of fact, *Korkutovic*, 284 S.W.3d at 658: Claimant left her job in Missouri when her active duty military spouse was issued orders to permanently relocate to Texas. In applying the law to the facts, we ask whether Claimant's leaving work "was voluntary in light of the law's plain language and these particular facts." *Difatta–Wheaton*, 271 S.W.3d at 598. We conclude that it would be inconsistent with the statutory language of "no fault" and "voluntarily" to hold that Claimant left work voluntarily when she left work in Missouri to relocate with her husband to Texas due to her husband's mandatory and permanent military change of station orders.[2] Claimant was unemployed through no "fault" of her own. Claimant was not responsible for her husband's change of station order or its timing. She notified Employer in July 2010, when she learned of her husband's mandatory change of station military order, and she even inquired if it would be possible to transfer her employment to a work station with Employer in or near Fort Hood, Texas. Thus, pursuant to the voluntariness analysis in *Difatta–Wheaton*, we conclude that Claimant was not responsible for, and could not control, her husband's mandatory and permanent military change of station orders to the state of Texas; that she attempted to preserve her employment with Employer, albeit unsuccessfully; and that under these circumstances, she did not leave her employment voluntarily.[3]

Point granted.

---

**2.** Our ruling today is confined to the facts of our case—a relocation brought about by a mandatory order of the United States military. We offer no commentary about the "voluntariness" of non-mandatory, non-military family relocations that lead to an employee's decision to cease employment with an employer and any corresponding impact upon the right to receive unemployment benefits.

**3.** We recognize that in *White v. Division of Employment Security*, 930 S.W.2d 518 (Mo. App. W.D.1996), a case with facts virtually identical to this case, we held that an employee voluntarily quit her job without good cause, thereby disqualifying her from unemployment compensation, when she left her job after her husband had received military orders transferring him to another state, even though her employer was unable to accommodate her move because it did not have offices in the other state. We found that claimant's "[r]elocation because of a spouse's military transfer is ... a voluntary decision not attributable to her work or to her employ-

## Conclusion

The Commission's decision denying Claimant unemployment benefits on the basis that she left work voluntarily is reversed, and the case is remanded for entry of an award of benefits to Claimant not inconsistent with our ruling today.

LISA WHITE HARDWICK, Chief Judge, and ANN MESLE, Special Judge, concur.

er." *Id.* at 519. However, because of the Missouri Supreme Court's subsequent construction and application of section 288.050.1(1) in *Difatta–Wheaton,* we overrule our prior decision in *White.* Missouri's Constitution expressly states that the Missouri Supreme Court "shall be the highest court in the state" and that its "decisions shall be controlling in all other courts." Mo. Const. art. V, § 2. As such, we are "constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court." *Kinder v. Mo. Dep't of Corr.,* 43 S.W.3d 369, 374 (Mo. App. W.D.2001). Because *White* was decided prior to *Difatta–Wheaton,* we did not have the Missouri Supreme Court's guidance to analyze whether claimant quit her job voluntarily in light of the public policy and liberal construction accorded the Employment Security Law.

Furthermore, our decision to overrule *White* on the basis of the controlling *Difatta–Wheaton* voluntariness analysis is buttressed by the fact that the Missouri Legislature has passed and the Governor has signed into law House Bill No. 136, repealing section 288.050 and enacting a new section in lieu thereof, effective August 28, 2011, stating that a claimant who quits work to relocate with an active duty military spouse who has received a mandatory and permanent military change of station order is not disqualified from receiving unemployment compensation:

> [i]f the deputy finds that, due to the spouse's mandatory and permanent military change of station order, the claimant quit work to relocate with the spouse to a new residence from which it is impractical to commute to the place of employment and the claimant remained employed as long as was reasonable prior to the move. The claimant's spouse shall be a member of the U.S. Armed Forces who is on active duty, or a member of the national guard or other reserve component of the U.S. Armed Forces who is on active national guard or reserve duty. The provisions of this paragraph shall only apply to individuals who have been determined to be an insured worker as provided in subdivision (22) of subsection 1 of section 288.030[.]

§ 288.050.1(e), 2011 Mo. Laws 284, 295, http://www.moga.mo.gov/ session-laws/2011/Part07_House.pdf. The General Assembly's action legislatively clarifying section 288.050 confirms our Supreme Court's interpretation of section 288.050 in *Difatta–Wheaton* and our ruling today.