

# Missouri Court of Appeals

## Southern District

### Division Two

PHILIP BERGER, )
)
    Claimant-Appellant, )
)
vs. ) No. SD33877
)
SCROLL COMPRESSORS, LLC, ) **Filed: November 12, 2015**
)
    Employer-Respondent, )
)
and MISSOURI DIVISION OF )
EMPLOYMENT SECURITY, )
)
    Respondent. )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**AFFIRMED**

Philip Berger ("Claimant") appeals from a decision by the Labor and Industrial

Relations Commission (the "Commission") concluding that he is disqualified for

unemployment insurance benefits following his separation from employment with Scroll

Compressors, LLC ("Employer"). In a single point, Claimant contends that the

Commission erred in ruling that he "voluntarily" left his employment. Using our

standard of review, we reject Claimant's point and affirm the Commission's decision.

## Commission Findings

The Commission concluded Claimant was disqualified for unemployment insurance benefits "because [Claimant] left work voluntarily . . . without good cause attributable to the work or employer." In so deciding, the Commission made findings of fact that included the following:

> Claimant had been working as a maintenance technician for employer since October 1995. He performed general maintenance on employer's production line equipment. From approximately 2002 through 2005, claimant worked in the scroll maintenance area. In this area, coolant chemicals called "metal working fluids" were in use.

> Because claimant's physician recommended that claimant be removed from exposure to such chemicals, employer moved claimant to the final process packaging area of its facility. This area is walled away from the scroll maintenance area. It is in the furthermost area away from the scroll maintenance area. After this transfer of areas, employer was not aware that claimant was experiencing any further health problems. His attendance was perfect, and he did not raise any further issues. At some point, however, employer became aware that claimant had filed a lawsuit against it.

> In general terms, claimant had sued employer due to what he contended was its lack of care by exposing him to chemicals that caused respiratory problems. During the civil hearing connected with such suit, employer learned that at least some of claimant's doctors were recommending that claimant not return to work for employer. Claimant had last actually worked for employer on November 8, 2013. He then took a two-week vacation. The civil hearing took place during that vacation.

> Claimant was scheduled to return to work on approximately November 25, 2013. On that date, claimant returned to work. Employer instructed him to attend a meeting with three of its management personnel. During this meeting, employer's representatives told claimant that it needed him to take a step before returning to work (his job was still immediately available to him).

> Because of the concerns that claimant's doctors had expressed during the hearing about claimant's continued work at employer's facility, employer gave claimant three options. First, he could give it a note from a doctor indicating either his full release to return to his normal duties or a note

2

indicating what limitations and/or accommodations claimant needed. Second, claimant could take time off by submitting paperwork under the Family and Medical Leave Act (FMLA). Third, he could apply for short-term disability insurance through a third-party insurer. Claimant left the meeting and indicated he would discuss these options with his attorney.

The Commission then found that (1) Employer's Manager of Human Resources, George Svaranowic, sent Claimant a letter dated December 2, 2013, (2) Claimant received the letter, (3) Claimant did not respond to the letter by December 13, 2013, (4) Svaranowic called and spoke to Claimant on December 13, 2013, (5) Claimant did not respond to Employer by January 2, 2014, (6) Svaranowic sent Claimant a letter dated January 2, 2014, (7) Claimant received the letter, and (8) the content of the letters and telephone conversation were as indicated in the letters and Svaranowic's testimony at the telephone conference hearing. The Commission then found as follows:

> Despite [Claimant's] receipt of [Svaranowic's January 2] letter, claimant never had further communication with employer. He did not provide any short-term disability papers. He did not submit any doctor note. He made no further attempt to return to work.
>
> Based on these facts and for reasons further detailed below, we find that claimant voluntarily left his work for employer effective February 14, 2014 [the expiration of the FMLA leave Employer granted Claimant].

In its conclusions of law, the Commission then concluded:

> Claimant clearly could and intended to return to work for employer as evidenced by his return to work on November 25, 2013. Since sometime in 2005, when employer transferred him into a different area of its facility where his exposure to the metal working fluids had been minimized, claimant had not made employer aware of any further problems in his work environment. After claimant sued it, employer had concerns about whether to return claimant to his former job or whether it needed to make further accommodations for him. Its request that he provide something current from the doctor of his choice to document his ability to return to his former job or his need for restrictions or other accommodations was reasonable. If he believed he needed more time for recuperation, he also had the options of FMLA leave and/or short-term disability.

Thus, we conclude that claimant had choices and alternatives and that he left his employment voluntarily by choosing not to pursue any of his alternatives through February 14, 2014 (the date through which employer had extended claimant a guaranteed leave under the FMLA).

The Commission then moved to the question whether Claimant's separation from work was without good cause attributable to Claimant's work or employer. The Commission concluded:

In the case before us, claimant did not testify to provide his reasons for quitting. We do not know whether he feared that continuing to work for employer might aggravate his respiratory problems, whether he could not afford to see a doctor, whether he felt that his working relationship with employer had been poisoned, or whether he simply did not want to make the effort of seeking and acquiring a letter from a doctor. Because it was claimant's burden to prove good cause for leaving his work for employer, we must conclude that he failed to meet this burden.

To prove good cause to quit, claimant had to prove not only the reason he quit, but that he exercised the type of good faith effort that a reasonable person who genuinely wanted to work would have exercised in trying to resolve any problems with employer. Even if for the sake of argument we assumed that claimant had good reasons for quitting, we have no evidence that employer was asking for something from claimant that was unreasonable or impossible to acquire. Nonetheless, without any explanation, claimant simply ceased communicating with employer. Accordingly, we are not persuaded that he acted reasonably.

### Standard of Review

In *Fendler v. Hudson Services*, 370 S.W.3d 585, 588-89 (Mo. banc 2012), our Supreme Court described our standard of review as:

Article V, section 18 of the Missouri Constitution provides for judicial review of the commission's decisions to determine whether they "are supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. Under section 288.210:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for

4

rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award. An appeal shall not act as a supersedeas or stay unless the commission shall so order.

§ 288.210. "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "This Court defers to the Commission on issues involving the credibility of witnesses and the weight given to testimony," *Johnson v. Denton Const. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995), but in so doing it does not view "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Hampton*, 121 S.W.3d at 223.

Additionally, whether an employee left work voluntarily or involuntarily is a question of fact for the Commission. *Miller v. Great Southern Bank*, 367 S.W.3d 111, 117 (Mo.App. S.D. 2012); *Dearborn v. Great Southern Financial Corp.*, 422 S.W.3d 487, 494 (Mo.App. S.D. 2014). The employee "generally has the burden of showing that he is eligible for benefits" with the result that the employee has the "burden of showing" that the employee left work involuntarily or, if the employee left voluntarily, that the employee did so with good cause attributable to the employee's work or employer. *Harris v. Division of Employment Security*, 350 S.W.3d 35, 39 (Mo.App. W.D. 2011).

5

**Law**

Under section 288.050.1(1), RSMo Cum.Supp. 2011, a claimant is disqualified

for unemployment insurance benefits if the claimant "left work voluntarily without good

cause attributable to such work or to the claimant's employer." Section 288.020, RSMo

2000, makes clear that Missouri's employment security law was enacted "under the

police powers of the state, for compulsory setting aside of unemployment reserves to be

used for the benefit of persons unemployed through no fault of their own," and provides

the law "shall be liberally construed to accomplish its purpose to promote employment

security both by increasing opportunities for jobs . . . and by providing for the payment of

compensation to individuals in respect to their unemployment."

**Analysis**

In a single point, Claimant asserts that the Commission

> erred in ruling that [Claimant] voluntarily left his employment by not
> providing a release from his doctor because its ruling is not supported by
> sufficient competent evidence in the record, and is erroneous as a matter
> of law pursuant to Section 288.210, RSMO, in that [E]mployer already
> had sufficient information regarding [Claimant]'s medical restrictions and
> the areas in which he could work from expert testimony provided at the
> civil trial.[1]

We reject Claimant's point because competent and substantial evidence on the whole

record supports the Commission's finding of fact that Claimant left work voluntarily.

Claimant relies upon ***Difatta-Wheaton v. Dolphin Capital Corporation***, 271

S.W.3d 594, 599 (Mo. banc 2008), for the proposition that, as a matter of law, his

---

[1] Claimant does not challenge the Commission's conclusion that Claimant failed to meet his burden to prove he had good cause attributable to his work or Employer for leaving work. In his brief, Claimant stated "the issue to be determined on appeal is whether [Claimant] voluntarily left his employment," and later noted "no showing of 'good cause' for leaving work is necessary" because Claimant's "separation from employment was involuntary." As a result, we address only the issue of whether the Commission erred in finding that Claimant left work voluntarily.

termination from employment was not voluntary. In ***Difatta-Wheaton***, the Supreme Court reversed "[t]he Commission's decision denying [an employee] unemployment benefits on the basis that [the employee] left work voluntarily." *Id.* at 599. In doing so, the Court held that (1) the purpose of the General Assembly in enacting Missouri's economic security law was to benefit "persons unemployed through *no fault* of their own," *id.* at 596, 598 (emphasis in the original), and (2) "voluntarily" in section 288.050.1(1) must be given its plain meaning, and means "proceeding from the will: produced in or by an act of choice." *Id.* at 598 (quotation marks and reference omitted).

The Supreme Court accepted the Commission's findings of fact as true and, thus, decided the issue as an issue of law. The important factual differences between ***Difata-Wheaton*** and this case are that, in ***Difata-Wheaton***, the employee, after a diagnosis and treatment of ovarian cancer, suffered a "medical emergency" related to the cancer. *Id.* at 595. She kept the employer notified of her medical condition and even offered to fax a statement from her doctor that she was not able to return to work the day that she was supposed to return. *Id.* The doctor faxed a statement to the employer later that day prescribing the employee was not able to return on that date. *Id.* The employer sent a letter to the employee stating she had "voluntarily" resigned by failing to return to work. *Id.* Based on these facts, the Court ruled that the employee's "absence from work was not voluntary" as a matter of law. *Id.*

The facts in this case differ from the facts in ***Difatta-Wheaton*** in an important way. In this case, Claimant, unlike the employee in ***Difatta-Wheaton***, did not take "steps necessary to preserve [his] employment" that the evidence indicated reasonably were within his control. *Id.* at 599. Consequently, the evidence was sufficient to permit the

Commission reasonably to find as a fact that Claimant left work voluntarily because he chose to leave work rather than take steps that were within his reasonable control to preserve his employment with the result that he was not unemployed through no fault of his own. The question in this case is not a question of law, but rather a question of fact that the Commission resolved in Employer's favor. Because there is no allegation of fraud, and the Commission's resolution of this question of fact is supported by competent and substantial evidence on the whole record, the Commission's finding of fact that Claimant left work voluntarily is conclusive.

Despite Employer's initial request and three subsequent, repeat requests – two by letter and one by telephone – and the fact that obtaining a physician's release appeared reasonably within Claimant's control, Claimant never responded to Employer's request and never informed Employer (or presented any evidence at the administrative telephone hearing) that he intended to seek a release, or was making an effort to obtain a release, or had made an effort to obtain a release and was unable to do so.[2]

This evidence was competent and substantial evidence to support the Commission's finding of fact that Claimant voluntarily left work.

Claimant's point is denied, and the Commission's decision is affirmed.

---

[2] *See Waggoner v. Ozark Anesthesia Associates, Inc.*, 364 S.W.3d 713, 718-19 (Mo.App. S.D. 2012) (insufficient evidence to support the Commission's conclusion that employee left work voluntarily where employee "had a desire to keep her job" and "made reasonable efforts to maintain her employment"); *Harris v. Division of Employment Security*, 350 S.W.3d 35, 37-38, 39-41 (Mo.App. W.D. 2011) (insufficient competent and substantial evidence to support the Commission's finding employee left work voluntarily where the employee caused her doctor to send a release to the employer, but the release failed to include a specific date for the employee's return to work and the employee was unable to get the doctor to correct the omission despite significant effort and some expense); *Korkutovic v. Gamel Company*, 284 S.W.3d 653, 655, 658 (Mo.App. E.D. 2009) (affirming the Commission's conclusion that the employee left work involuntarily where the employee provided a doctor's note that imposed work restrictions, but the employer was unable reasonably to accommodate the restrictions and would not permit the employee to work and ignore the doctor's restrictions).

8

Nancy Steffen Rahmeyer, J. - Opinion Author

Don E. Burrell, P.J. - Concurs

William W. Francis, Jr., J. - Concurs