

# In the Missouri Court of Appeals
# Eastern District

<u>**DIVISION FIVE**</u>

| | | |
|---|---|---|
| MELANIE L. HILL, | ) | No. ED110563 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| vs. | ) | |
| | ) | |
| S.M. HUBER ENTERPRISES, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DIVISION OF EMPLOYMENT SECURITY, | ) | |
| | ) | |
| Respondents. | ) | FILED: February 28, 2023 |

<u>Introduction</u>

Melanie L. Hill ("Hill") appeals from the decision of the Labor and Industrial Relations Commission (the "Commission") denying unemployment benefits. Hill raises two points on appeal contending that the Commission's finding that she voluntarily quit was unsupported by competent or substantial evidence. As a temporary employee, Hill was statutorily required to contact her employer for reassignment in order to qualify for unemployment benefits. Although Hill points to her testimony as evidence that she contacted her employer for reassignment, the record also contains evidence that she did not. Because we defer to the Commission's factual determinations when there is conflicting evidence, the Commission's conclusion that Hill

voluntarily quit was supported by competent and substantial evidence that Hill did not contact her employer for reassignment. Accordingly, we affirm the Commission's decision.

Factual and Procedural History

S.M. Huber Enterprises, Inc. ("S.M. Huber"), a temp agency, employed Hill as a temporary employee. While assigned to the Board of Elections, Hill contracted COVID-19. After working on October 28, 2020, Hill called in sick on October 29 and 30. On the following Monday, November 2, Hill called in and stated she would not return for the rest of the week due to symptoms of COVID-19. Hill believed her temporary assignment at the Board of Elections was ending on November 6. On January 10, Hill filed for unemployment benefits and was denied on the basis that she left work voluntarily.

The proceeding went before the Appeals Tribunal, which held a hearing via telephone. The Appeals Tribunal heard conflicting testimony as to whether Hill contacted S.M. Huber for reassignment. Hill testified that she believed she called S.M. Huber on January 1, 2021, and left a voicemail indicating she was ready to work but received no response. Connie Huber ("Huber") from S.M. Huber denied receiving Hill's call, and testified that the company logs maintained for such calls showed none received from Hill after November 2. Hill testified that she did not make any other calls to S.M. Huber and stated that no one from S.M. Huber ever contacted her. Hill further testified that she reviewed S.M. Huber's website at that time and did not see any jobs for which she felt she was suited or qualified. At the hearing, Huber also presented a policy Hill had initialed and signed, which stated that when an assignment ends, the employee must report to the employer for a new assignment and, further, that failure to do so will indicate a voluntary quit, making the employee ineligible for unemployment benefits.

Following the hearing, the Appeals Tribunal determined that Hill voluntarily quit without good cause. Specifically, it found she quit because she was ill with symptoms of COVID-19,

2

which was a personal reason for departure not due to her job or the employer. Hill filed an application for review to the Commission. The Commission adopted and affirmed the decision of the Appeals Tribunal. Hill now appeals.

Points on Appeal

Hill raises two points on appeal. Point One asserts the Commission erred in finding she voluntarily quit because the decision was not based on competent or substantial evidence in that Hill left work due to being ill with symptoms of COVID-19, which cannot constitute a voluntary quit as a matter of law. Point Two argues the Commission erred in finding she voluntarily quit because the decision was not based on competent or substantial evidence in that Hill testified she contacted S.M. Huber and attempted to return to work but was denied employment.

Standard of Review

Our review of the Commission's unemployment benefits decision is governed by Section 288.210. We may modify, reverse, remand for hearing, or set aside the decision **only** under the following circumstances:

> (1) That the [C]ommission acted without or in excess of its powers;
> (2) That the decision was procured by fraud;
> (3) That the facts found by the [C]ommission do not support the award; or
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210.[1] "We defer to the Commission's determinations on issues resolving matters of witness credibility and conflicting evidence, and thus, the Commission's decision should not be overturned unless it is contrary to the overwhelming weight of the evidence." Koenen v. BRG Liberty, LLC, 647 S.W.3d 47, 51 (Mo. App. E.D. 2022) (internal quotation omitted). However, although we defer to the Commission on all factual issues that are supported by competent and

---

[1] All Section references are to RSMo (2016).

3

substantial evidence, we owe no deference to its conclusions of law or application of the law to the facts. Chavis v. Wal-Mart Assocs., Inc., 646 S.W.3d 703, 705 (Mo. App. E.D. 2022) (internal citation omitted).

Discussion

Because both Points One and Two challenge whether competent and substantial evidence supported the Commission's finding that Hill voluntarily quit, we address the points together.

Section 288.050 governs the denial of unemployment benefits on the grounds of a voluntary quit. Specifically, the Commission properly withholds unemployment benefits if the individual seeking benefits "left work voluntarily without good cause attributable to such work or to the claimant's employer." Section 288.050.1(1); Chavis, 646 S.W.3d at 706 (quoting Difatta-Wheaton v. Dolphin Cap. Corp., 271 S.W.3d 594, 598 (Mo. banc 2008)). Whether an employee left work voluntarily is generally a factual determination, which we review for "whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." Chavis, 626 S.W.3d at 705–06 (internal quotation omitted).

S.M. Huber employed Hill as a temporary employee of a temporary help firm, thus the relevant statute provides as follows:

> ***A temporary employee of a temporary help firm will be deemed to have voluntarily quit employment if the employee does not contact the temporary help firm for reassignment prior to filing for benefits.*** Failure to contact the temporary help firm will not be deemed a voluntary quit unless the claimant has been advised of the obligation to contact the firm upon completion of assignments and that unemployment benefits may be denied for failure to do so.

Section 288.050.1(1) (emphasis added); Section 288.051.2 (same). Hill carries the burden of establishing she was discharged and did not voluntarily quit. See Chavis, 646 S.W.3d at 706 (internal quotation omitted).

4

Preliminarily, the Commission concedes that the rationale used in the written decision to deny Hill employment benefits was improper as a matter of law. See Koenen, 647 S.W.3d at 52 (internal quotation omitted) (noting "the standard of review is de novo when the issue is whether the facts found by the Commission can, as a matter of law, be considered to constitute a voluntary departure from employment"). In particular, the written decision states Hill voluntarily stopped working after contracting a non-work-related illness. The Supreme Court of Missouri has overruled cases in which leaving employment for a non-work-related illness was held to be a voluntary quit, because such reasoning is inconsistent with the statutory language of "no fault" and "voluntarily." Difatta-Wheaton, 271 S.W.3d at 598 (citing Sections 288.020.1, .050.1(1)) (noting unemployment benefits are designed to be used "for the benefit of persons unemployed through no fault of their own"). Rather, "[a] claimant's absence from work due to a non-work-related illness is not, as a matter of law, leaving work voluntarily." Chavis, 646 S.W.3d at 706 (internal quotation omitted).

However, the Commission correctly notes that we may nonetheless affirm its decision if it is supported by competent and substantial evidence in the record. See Menley v. JJF & C, LLC, 637 S.W.3d 687, 691–92 (Mo. App. E.D. 2021) (internal citation omitted); see also Mandacina v. Harrah's of N. Kansas City, 512 S.W.3d 98, 102 n.5 (Mo. App. W.D. 2017) (citing Johnson v. Div. of Emp. Sec., 318 S.W.3d 797, 807 (Mo. App. W.D. 2010)) (noting "[w]e may uphold a Commission decision despite a wrong or insufficient reason for the ruling" where it reached the right result). In determining whether we can uphold the Commission's decision to deny unemployment benefits despite improper reasoning in the written decision, we remain bound by the Commission's factual findings and cannot make contrary factual findings. Cotton v. Flik Int'l Corp., 213 S.W.3d 189, 193 (Mo. App. E.D. 2007) (internal citation omitted). "The

5

determination of the Commission on conflicting facts is conclusive." Id. (internal citation omitted); see also Koenen, 647 S.W.3d at 51 (internal citation omitted).

Here, the main issue presented is whether the record supports a finding that Hill, a temporary employee working for a temp agency, did not contact S.M. Huber for reassignment and therefore voluntarily quit without good cause. See Sections 288.050.1(1), .051.2. The Commission's finding that Hill voluntarily quit when she separated from her job on November 2 implicitly credited Huber's testimony that Hill did not contact S.M. Huber for reassignment. See id. Although Hill testified that she believed she called S.M. Huber and left a voicemail on January 1 seeking reassignment, the Commission was free to disbelieve her testimony and instead believe the conflicting testimony from Huber, who denied that Hill contacted S.M. Huber. See Chavis, 646 S.W.3d at 707 (noting it is within the Commission's province to determine the weight and credibility of the evidence). Huber noted that S.M. Huber maintains call logs and showed no calls received from Hill after November 2. The record further shows Hill agreed to S.M. Huber's policy that she was required to contact them for reassignment in order to maintain her employment. See Section 288.050.1(1) ("Failure to contact the temporary help firm will not be deemed a voluntary quit unless the claimant has been advised of the obligation to contact the firm upon completion of assignments[.]"); Section 288.051.2 (same). Although Hill testified she checked S.M. Huber's website and did not see any job postings for which she felt she was suited or qualified, S.M. Huber's policy and Sections 288.050.1(1) and 288.051.2 obligated Hill to contact S.M. Huber for reassignment prior to seeking unemployment benefits. See Sections 288.050.1(1), .051.2.

The facts before us are thus distinguishable from those in Chavis, where the record showed the claimant made multiple attempts to contact the employer to return to work. See

6

Chavis, 646 S.W.3d at 707. Further, the claimant's evidence was undisputed by the employer, who did not participate in the hearing or dispute any of the claimant's testimony. Id. In that case, we reversed the denial of unemployment benefits, acknowledging that "[i]t is difficult to apply the phrase 'left work voluntarily' where 'the employee has conscientiously provided notice of the absence, purports to want to be at work, and claims constraint from attendance by circumstances such as sickness or some other difficulty.'" Id. (internal quotation omitted). Contrastingly, here, the record contains conflicting testimony as to whether Hill contacted S.M. Huber to indicate her desire to return to work and be reassigned prior to seeking unemployment benefits. Further, the Commission did not find that Huber's testimony was not credible. We must resolve factual disputes in deference to the Commission's factual findings that are supported by competent and substantial evidence. See id. at 705 (internal citation omitted); Koenen, 647 S.W.3d at 51 (internal citation omitted); Cotton, 213 S.W.3d at 193 (internal citation omitted).

The foundation of Hill's appeal is the alleged lack of competent and sufficient evidence. Given the record before us, we cannot say that the Commission's determination that Hill voluntarily quit was unsupported by competent and substantial evidence. See Section 288.210; Chavis, 626 S.W.3d at 705–06 (internal quotation omitted). Although Hill disputes Huber's testimony, the record nevertheless contains evidence that Hill did not contact S.M. Huber for reassignment before seeking unemployment benefits. This evidence is sufficient to support the Commission's denial of unemployment benefits under Sections 288.050.1(1) and 288.051.2. See Chavis, 646 S.W.3d at 706 (internal quotation omitted). Accordingly, we deny the appeal.

## Conclusion

The decision of the Commission is affirmed.

_____

KURT S. ODENWALD, Judge

Michael E. Gardner, C.J., concurs.
Kelly C. Broniec, J., concurs.